**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**MYRA LAKISHA STEWART,**

        Petitioner,

  v.                           **CIVIL ACTION NO. 2:05cv740**
                                [ORIGINAL CRIMINAL NO. 2:04cr193]

**UNITED STATES OF AMERICA,**

        Respondent.

### MEMORANDUM OPINION AND FINAL ORDER

This matter comes before the court on petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. For the reasons set forth herein, the court **DENIES** petitioner's motion.

### I.  Factual and Procedural History

On March 29, 2004, Portsmouth, Virginia, police officers executed a search warrant at the residence of Melvin Kentea Crawley ("Crawley") and petitioner Myra Lakisha Stewart ("Stewart"). At the time of the search, only Stewart was present at the residence. The officers recovered 373.4 grams of cocaine base, 2.788 grams of a substance containing a detectable amount of heroin, two firearms located in a black duffle bag in a hallway, and a semi-automatic pistol concealed in the dresser drawer of a bedroom. The bedroom also contained personal papers and effects of both Crawley and Stewart.  The officers arrested Stewart.  The police subsequently

apprehended Crawley, who admitted that the drugs and firearms belonged to him and that Stewart was not involved in his criminal activities.

On September 23, 2004, a four-count indictment was returned against Stewart. On October 4, 2005, the court appointed Keith L. Kimball ("Kimball") to represent her. On November 18, 2004, pursuant to a written plea agreement, Stewart pled guilty to Count Two, which charged her with Possession With Intent to Distribute Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) (1999).[1] Under the terms of the plea agreement, Stewart waived the right to have sentencing facts found by a jury and proven beyond a reasonable doubt. See Plea Agreement at 3, ¶ 4. She consented to be sentenced pursuant to the United States Sentencing Guidelines (the "Guidelines") and to have all sentencing facts found by a judge, based on a preponderance of the evidence. See id. Furthermore, she waived the right to challenge the constitutionality of the Guidelines during her sentencing, see id. at 3, ¶ 4, and she waived her right to appeal her sentence, see id. at 4, ¶ 7.

Prior to accepting Stewart's guilty plea, the court conducted a complete plea colloquy pursuant to Federal Rule of Criminal

---

[1] Stewart and the United States entered into the plea agreement after the Supreme Court had issued Blakely v. Washington, 542 U.S. 296 (2004), but before the Court decided United States v. Booker, 543 U.S. 220 (2005).

Procedure 11.  See Fed. R. Crim. P. 11.  Under oath, Stewart confirmed that during Kimball's consultations with her, he discussed the Guidelines, Plea Hr'g Tr. at 6 (Nov. 18, 2004); reviewed the charges against her, id. at 7; explained the terms of the plea agreement, id. at 8-9; reviewed the consequences of waiving her right to appeal, id. at 14-15; and discussed the waiver of her rights under Blakely v. Washington, 542 U.S. 296 (2004), Plea Hr'g Tr. at 15-16.  Stewart further confirmed under oath that she was not threatened into pleading guilty, no parties made promises in exchange for her guilty plea, and she was entering the plea agreement freely and voluntarily.  Plea Hr'g Tr. at 11-12 and 19.  Finally, she stated under oath that she had a full opportunity to discuss her case with Kimball, including the relevant facts and potential legal defenses, and that she was satisfied with his representation.  Id. at 13.

On March 3, 2005, the court held a sentencing hearing.  A pre-sentence report ("PSR") prepared for the hearing found Stewart to have a base Offense Level of 30 and a Criminal History Category of I.  The PSR added two levels to her Offense Level for possession of a firearm, see U.S.S.G. § 2D1.1(b)(1) (2003); subtracted two levels for being a minor participant in the offense of conviction, see U.S.S.G. § 3B1.2(b); and subtracted three levels for acceptance of responsibility, see U.S.S.G. § 3E1.1(b).  The resulting Guidelines range was seventy to eighty-seven months, but a minimum sentence of

3

one-hundred-and-twenty months was statutorily required, pursuant to 21 U.S.C. § 841(b)(1)(A).

In response to the PSR, Stewart argued that her case fell within the safety-valve provision set forth in 18 U.S.C. § 3553(f), which permits a court to sentence a defendant according to the Guidelines instead of a statutory minimum, if five conditions are met.[2] Stewart also argued that she deserved a three-level reduction for her minor role in the crime, see U.S.S.G. § 3B1.2, and that the enhancement for possession of a weapon was unwarranted. With respect to Stewart's argument that the safety valve provision applied to her case, the United States responded that she constructively possessed the three firearms found in her residence, and thus she failed to meet the second condition required by § 3553(f).[3] However, despite the location of these firearms, including the one in her own bedroom, the court found that Stewart satisfied all of the safety-valve conditions and could be sentenced under the Guidelines instead of the statutory minimum. The court also determined to reduce her Offense Level by three

---

[2] These conditions are that (1) the defendant does not have more than one criminal history point; (2) the defendant did not use violence or possess a firearm during the commission of her crime; (3) the crime did not cause the death or serious bodily injury of another person; (4) the defendant was not an organizer, leader, manager, or supervisor; and (5) the defendant assisted the Government in its investigation and prosecution of the crime in which she was involved. See 18 U.S.C. § 3553(f).

[3] See supra note 2.

4

levels for her limited role in the crime, instead of only two levels as recommended in the PSR. The court further granted Stewart a three-level reduction for acceptance of responsibility, as well as a two-level reduction for qualifying for the safety valve provision, see U.S.S.G. § 2D1.1(b)(6). Finally, the court denied her objection to the weapon-possession enhancement.

The resulting Offense Level was twenty-four. Combined with her Criminal History Category of I, the Guidelines range was fifty-one to sixty-three months. After finding the sentencing facts, calculating the appropriate Guidelines range, and listening to the parties' arguments, the court proceeded to sentence Stewart. It methodically explained that although Stewart was not deeply involved in carrying out the crime to which she pled guilty, she still enabled Crawley to conduct his drug dealing activities, allowed her residence to be used to facilitate narcotics trafficking, and negatively impacted her child by permitting Crawley to conduct his criminal activities before the child. Sent. Hr'g Tr. at 71-73 (March 3, 2005). The court further stated that Stewart's lack of a criminal record, along with her minor role in the offense, were circumstances in her favor. Id. at 74. Finally, the court noted that Stewart was fortunate to qualify for the safety valve provision, thereby eliminating the statutory minimum, despite the presence of three firearms in her residence. Id. at 73. The court subsequently sentenced Stewart to sixty months

imprisonment.  Id. at 74.

On December 5, 2005, Stewart submitted a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence.  Stewart brings three claims.  First, she contends that the court violated the Sixth Amendment by sentencing her based on judicial fact-finding and a preponderance-of-the-evidence standard.  Second, Stewart states that the court's sentence is unreasonable.  Third, Stewart alleges that Kimball provided ineffective assistance of counsel by failing to communicate with her, explain the legal proceedings, review the terms of the plea agreement, and follow up on matters after the court rendered its sentence.  Stewart attached no memorandum to her motion.  The United States responded on February 8, 2006.  Stewart never replied.  This matter is now ripe for review.

## II.  Standard of Review

Pursuant to 28 U.S.C. § 2255, a prisoner may submit a petition attacking a sentence imposed by a federal court.  Section 2255 provides four grounds for bringing such a challenge: (1) "the sentence was imposed in violation of the Constitution or the laws of the United States;" (2) the sentencing court did not have jurisdiction to impose the sentence; (3) the sentence exceeded the statutory maximum; or (4) the sentence "is otherwise subject to collateral attack."  28 U.S.C. § 2255 (1994).  The petitioner bears the burden of proving her claim by a preponderance of the evidence.

See Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958). When deciding a § 2255 motion, a district court need not hold a hearing if "the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255.

### III.  Discussion

#### A.  Sixth Amendment Claim

Stewart argues that her Sixth Amendment rights were violated because the court enhanced her sentence based on facts found by the court and pursuant to a preponderance-of-the-evidence standard.[4] See United States v. Booker, 543 U.S. 220, 231-34 and 244 (2005) (finding that if the Guidelines are mandatory, then sentencing facts must by found by a jury and beyond a reasonable doubt to avoid a violation of the Sixth Amendment).  However, "nothing prevents a defendant from waiving his [Sixth Amendment] rights. When a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding." Blakely v. Washington, 542 U.S. 296, 310 (2004).[5]

---

[4] Stewart does not specify which enhancement she is challenging, but the enhancement for possession of a weapon is the only increase to her Guidelines Range that was based on judicial fact-finding and a preponderance of the evidence.

[5] The Fourth Circuit has repeatedly affirmed sentences imposed under the pre-Booker Guidelines regime in cases similar to this one, in which a defendant waived his Sixth Amendment rights in a plea agreement entered into prior to the Supreme Court applying Blakely to the Federal Guidelines.  See, e.g., United States v. Blick, 408 F.3d 162, 173 (4th Cir. 2005); United States v.

7

In this case, Stewart waived her right to have a jury find sentencing facts beyond a reasonable doubt, consented to judicial fact-finding based on a preponderance of the evidence, and agreed to being sentenced under the pre-Booker Guidelines regime. See Plea Agreement at 3, ¶ 4. She also waived the right to challenge the constitutionality of the Guidelines during her sentencing. See id. A waiver of Sixth Amendment rights is valid if the defendant waived her rights voluntarily and knowingly. See United States v. Johnson, 410 F.3d 137, 151 (2005); see, e.g., United States v. Legette, 137 Fed. Appx. 570, 571 (2005) (unpublished). Here, Stewart has made no argument that the waiver of her rights was not made voluntarily or knowingly. Moreover, during her Rule 11 plea colloquy, Stewart specifically assured the court that she entered her plea agreement voluntarily and without coercion or promises made to her. See Plea Hr'g Tr. at 11-12 and 19. Stewart further informed the court that Kimball explained to her the nature of the charges against her, the terms of her plea agreement, how the Guidelines work, the facts and law relevant to her case, and her Blakely rights. See id. at 6-9, 13, and 15-16. Thus, Stewart confirmed that she knew the precise rights she was waiving and the sentencing procedures she would be subjected to by waiving those rights. "Absent clear and convincing evidence to the contrary, a

---

Woodbury, 2006 U.S. App. LEXIS 12138, at *6 (4th Cir. 2006) (unpublished); United States v. Legette, 137 Fed. Appx. 570, 571 (2005) (unpublished).

defendant is bound by the representations he makes under oath during a plea colloquy." Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1299 (4th Cir. 1992). Stewart has offered no arguments or evidence to counter her plea colloquy statements. Consequently, her Rule 11 plea colloquy establishes that the waiver of her Sixth Amendment rights was voluntary and knowing, and her claim must fail.

**B. Unreasonable Sentence Claim**

Stewart argues that her sentence of sixty months is unreasonable. See Booker, 543 U.S. at 261-64 (discussing the reasonableness standard set forth in 18 U.S.C. § 3553).[6] However, this argument is not cognizable as a § 2255 claim. An attack on the reasonableness of her sentence is a claim that the sentencing failed to comply with 18 U.S.C. § 3553. See Booker, 543 U.S. at 259-64 (discussing how sentencing and appellate review operate under 18 U.S.C. § 3553, now that the Guidelines have been rendered advisory); see also United States v. Hughes, 401 F.3d 540, 552-54 (4th Cir. 2005) (explaining that there are two types of errors

---

[6] In fact, Stewart only states that the court is required to review her sentence for reasonableness, and she does not assert that the sentence is unreasonable. Pet'r's Mot. at 5. However, the court will liberally read her pro se motion as asserting an unreasonableness claim. See, e.g., United States v. Gholson, 33 Fed. Appx. 80, 81 (4th Cir. 2002) (unpublished) (stating that pro se § 2255 motions must be liberally construed). However, this argument is far-fetched, given that Stewart received protection under the safety valve provision, thus escaping the mandatory minimum sentence.

under Booker: constitutional error that violates the Sixth Amendment and statutory error that incorrectly applies the Guidelines). A habeas claim that does not attack the constitutionality of a sentencing, or a court's jurisdiction to impose the sentence, is cognizable under § 2255 only if the violation constitutes a "complete miscarriage of justice." United States v. Addonizio, 442 U.S. 178, 185 (1979). Mere misapplication of statutory sentencing requirements does not constitute a miscarriage of justice. See United States v. Mikalajunas, 186 F.3d 490, 492 and 496 (4th Cir. 1999) (finding that an incorrect application of a Guidelines provision that resulted in a fifty-two month enhancement was not subject to collateral attack, because "a misapplication of the guidelines typically does not constitute a miscarriage of justice."). Nor does Stewart's sentencing present "aggravating circumstances" which constitute a miscarriage of justice. See Reed v. Farley, 512 U.S. 339, 350 (1994) (plurality).[7] Therefore, Stewart does not have an actionable

---

[7] See also Reed v. Farley, 512 U.S. 339, 350 (1994) (Scalia, J., concurring) (stating that "aggravating circumstances" refer "to circumstances that cause additional prejudice to the defendant") (emphasis in original). In this case, Stewart entered her sentencing hearing facing a one-hundred-and-twenty month statutory minimum. However, the court found that she qualified for the safety valve provision set forth in 18 U.S.C. § 3553(f), despite the fact that three firearms were found in her residence, one of which was located in her bedroom. Consequently, she received a sentence of one-half the restricted minimum. Moreover, the court sentenced her within the Guidelines range, which is presumptively reasonable even under the post-Booker regime. See United States v. Moreland, 437 F.3d 424, 433 (4th Cir. 2006). The court also

§ 2255 claim for challenging the reasonableness of her sentence.

Even if Stewart's claim was cognizable, it would be meritless because she specifically agreed to be sentenced under the Guidelines. See Plea Agreement at 3. Therefore, she cannot now attack her sentence for being imposed in the manner to which she consented.[8] To hold otherwise would allow Stewart to retain the benefits of the plea agreement – to plead guilty, obtain acceptance of responsibility, have three charges dismissed, and avoid a trial which could result in a lengthier sentence – but to deprive the United States of a benefit for which it bargained, namely to have Stewart sentenced pursuant to the Guidelines.[9]

---

meticulously explained why a sentence of sixty months was appropriate. See supra at 5. Stewart waived her right to appeal directly, willingly foregoing the proper means for challenging a non-constitutional sentencing error, in order to obtain the benefits of her plea agreement. Finally, there is no evidence anywhere in the record that Stewart is actually innocent of the underlying crime. See United States v. Mikalajunas, 186 F.3d 490, 494 (4th Cir. 1999) (explaining that a defendant who is actually innocent of a crime can demonstrate a miscarriage of justice). Hence, this case hardly constitutes aggravating circumstances or prejudice.

[8] See supra note 5 (citing cases in which defendants were required to honor their agreement to be sentenced according to the Guidelines).

[9] Although Stewart might be re-assessing the value of a plea agreement that precluded the application of Blakely to her sentencing, it is noteworthy that not only Stewart, but also the United States, took a risk by binding itself to the Guidelines. Because the court found that Stewart qualified for the safety valve provision of 18 U.S.C. § 3553(f), the Guidelines range of fifty-one to sixty-three months applied to Stewart's sentencing, rather than the statutory minimum of one-hundred-and-twenty months. Since the United States was bound by the Guidelines, it could not argue that

## C. Ineffective Assistance of Counsel Claim

In order to prevail on an ineffective-assistance-of-counsel claim, a § 2255 petitioner must prove that (1) her attorney's performance was deficient; and (2) the deficient performance prejudiced the petitioner by undermining the reliability of the judgment against her. See Strickland v. Washington, 466 U.S. 668, 687 (1984). A Strickland claim fails if the petitioner does not satisfy both, the performance prong and the prejudice prong. Id. at 700. Thus, a court need consider only one component of the test if the petitioner does not carry her burden of proving that one prong. See id.

Stewart contends that Kimball's counsel was ineffective because he did not (1) communicate with her; (2) explain the legal proceedings to which she was subjected; (3) review the terms of the plea agreement; or (4) follow up on matters after the court rendered its sentence. With respect to the first three bases of her Strickland claim, Stewart's allegations are in direct contradiction to the representations she made at her plea colloquy.[10] "Absent clear and convincing evidence to the contrary,

---

Stewart should have been sentenced above sixty-three months and closer to the one-hundred-and-twenty month sentence that it sought. Therefore, both parties have obtained certain benefits from this plea agreement, and both sides have had to accept risks of the agreement that have manifested.

[10] See supra at 2-3 (summarizing Stewart's plea colloquy, during which she expressed that she was satisfied with Kimball's representation and confirmed that during his consultations with

12

a defendant is bound by the representations he makes under oath during a plea colloquy." <u>Fields</u>, 956 F.2d at 1299. Stewart not only has failed to present clear and convincing evidence, but she has not presented any evidence at all. Nor has she pointed to specific circumstances or events that demonstrate how Kimball ineffectively represented her as she contends. Rather, she merely makes conclusory allegations. With respect to her claim that Kimball did not follow up on matters after she was sentenced, Stewart waived her right to appeal. She has not cited any other matters which would have required further representation after her sentencing. Consequently, Stewart has failed to carry her burden to show that Kimball's performance was deficient under prong one of <u>Strickland</u>. To the contrary, her plea colloquy establishes that her <u>Strickland</u> allegations are meritless.

### **IV. Conclusion**

For the reasons stated above, petitioner's § 2255 motion is **DENIED**. Petitioner is **ADVISED** that she may appeal from this Memorandum Opinion and Final Order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510. The written notice must be received by the Clerk within sixty (60) days

---

her, he discussed the Guidelines, reviewed the charges against her, explained the plea agreement, discussed the facts of her case and potential legal defenses, and reviewed her constitutional rights and the consequences of waiving those rights).

from the date of this Memorandum Opinion and Final Order.

The Clerk is **DIRECTED** to forward a copy of this Memorandum Opinion and Final Order to petitioner; to Keith L. Kimball, petitioner's former counsel; and to Special Assistant United States Attorney Andrew M. Robbins.

**IT IS SO ORDERED.**

/s/
Rebecca Beach Smith

Norfolk, Virginia

July 21, 2006